UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD SERVILLO,

    Plaintiff,

v.                                      Case No. 2:20-cv-00130-JLB-NPM

SOLA MEDI SPA, LLC, a Florida limited
liability company,

    Defendant.
_____/

## ORDER

Plaintiff Richard Servillo moves for a final default judgment. (Doc. 12.) Defendant Sola Medi Spa, LLC (SMS) has not responded, and the time to do so has expired. Local Rule 3.01(c). Based on the arguments in the motion and the well-pleaded allegations in Mr. Servillo's complaint, (Doc. 1), the Court grants the motion for default judgment as to liability. The record, however, does not adequately support the damages Mr. Servillo requests. Accordingly, Mr. Servillo's motion is **GRANTED IN PART** as to liability and referred to United States Magistrate Judge Nicholas Mizell for an evidentiary hearing on damages.

    I.    **FACTS AND PROCEDURAL POSTURE**

Mr. Servillo served SMS with process on April 8, 2020. (Doc. 7.) After SMS failed to timely file a responsive pleading, Mr. Servillo moved for a clerk's default, (Doc. 8), which was entered on May 20, 2020, (Docs. 8–9.) According to the complaint, Mr. Servillo began employment with SMS in January 2019 after relocating from New Jersey. (Doc. 1 at ¶¶ 8–9.) Shortly afterwards, Tricia Tobias—

Mr. Servillo's "boss" at SMS—began to "engag[e] in unwanted physical touching in an attempt to engage in sexual intercourse" with Mr. Servillo. (Id. at ¶11.) Ms. Tobias also sent Ms. Servillo sexually explicit photographs and text messages and, eventually, conditioned Mr. Servillo's continued employment on his "agreeing to be in a romantic/sexual relationship with her." (Id. at ¶12.) Mr. Servillo refused, and Ms. Tobias "promptly terminated" him. (Id. at ¶13.) The complaint further provides that Mr. Servillo "complained to [SMS]" about Ms. Tobias's harassment, and these complaints proximately caused his termination. (Id. at ¶¶ 41-43, 55-57.)

## II.  LEGAL STANDARD

A clerk's default has been entered in this case. See Fed. R. Civ. P. 55(a); (Doc. 8). After a clerk's default, if the damages requested are not for a "sum certain," then the plaintiff "must apply to the court for a default judgment," and "the court may conduct a hearing on damages." Fed. R. Civ. P. 55(b)(2).

"Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)). "Conceptually . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim," and the Eleventh Circuit has explained that the appropriate standard for reviewing a motion for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Id. (citations omitted). To survive dismissal for failure to state a claim, a complaint need only contain "a short and plain statement

2

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007))). To state a cognizable claim for employment discrimination, Title VII complaints need not preemptively address the entire McDonnell Douglas framework—it is enough for them to "provide enough factual matter to plausibly suggest intentional discrimination." Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1253 (11th Cir. 2017) (citing Surtain, 789 F.3d at 1246).

### III. LIABILITY

#### A. Sexual Harassment

Mr. Servillo pleads claims for sexual harassment under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 ("FCRA"). See 42 U.S.C. § 2000e-2(a)(1); Fla. Stat § 760.10(1)(a). The Eleventh Circuit has explained:

> To prove sexual harassment under Title VII, a plaintiff must show (1) that [he] belongs to a protected group; (2) that [he] has been subjected to unwelcome sexual harassment; (3) that the harassment was based on [his] sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1244 (11th Cir. 2004) (listing elements for a sex discrimination claim under a "hostile work environment" theory); see also Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1361 (11th Cir. 1994) (listing substantially the same elements for a claim under the "tangible action" or

"quid pro quo" theory).[1] A sex discrimination claim under FCRA requires the same elements. See, e.g., Blizzard v. Appliance Direct, Inc., 16 So. 3d 922, 927 (Fla. 5th DCA 2009); see also Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000) ("The statute's stated purpose and statutory construction directive are modeled after Title VII of the Civil Rights Act of 1964.").

The admitted facts establish that Mr. Servillo, a male, was subjected to various forms of sexual advances by Ms. Tobias—his "boss" at SMS. (Doc. 1 at ¶¶ 8–9, 11–12.) Ms. Tobias conditioned Mr. Servillo's employment at SMS on his "agreeing to be in a romantic/sexual relationship with her." (Id. at ¶ 12.) When he refused, Ms. Tobias terminated his employment. (Id. at ¶ 13.) Based on these allegations, Mr. Servillo's complaint states a plausible claim for sexual harassment.

B.   Retaliation

Title VII and FCRA also prohibit retaliation for opposing any practice those statutes make unlawful. 42 U.S.C. § 2000e-3(a); Fla. Stat § 760.10(a)(7). A plaintiff establishes a prima facie case of retaliation by showing that: (1) he "engaged in statutorily protected activity"; (2) he "suffered a materially adverse action"; and (3) "there was a causal connection between the protected activity and the adverse action." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012) (quoting Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010)); see also

---

[1] A tangible employment action is essentially the same as an adverse employment action in the context of a hostile work environment claim. See Hyde v. K.B. Home, Inc., 355 F. App'x 266, 271 (11th Cir. 2009) (citing Webb–Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1031 (11th Cir.2008)).

4

Tequesta v. Luscavich, 240 So. 3d 733, 738 (Fla. 4th DCA 2018) (citing Donovan v. Broward Cnty. Bd. of Comm'rs, 974 So. 2d 458, 460 (Fla. 4th DCA 2008)) (articulating the same elements for a retaliation claim under FCRA).

The admitted facts establish that: (1) Mr. Servillo engaged in a protected activity by complaining about Ms. Tobias's conduct; (2) he suffered a materially adverse action in the form of termination; and (3) his complaints were a proximate cause of the termination. (Doc. 1 at ¶¶ 41–43, 55–57.) Based on these allegations, Mr. Servillo's complaint states a plausible claim for retaliation.

## IV. DAMAGES

Before entering a default judgment, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). "Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" Adolph Coors Co. v. Movement Against Racism & The Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)).

Rule 55(b)(2) uses the permissive "may" regarding hearings on damages, but the Eleventh Circuit has cautioned that a court should not award money damages "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co., 777 F.2d at 1543 (quoting Freeman, 605 F.2d at 857). Thus, while a hearing is not always required, one should nevertheless be held unless the court "already has a wealth of evidence from the

5

party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citing KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 21 (1st Cir. 2003)).

Mr. Servillo requests four types of damages under Title VII and FCRA: (1) back pay; (2) front pay in lieu of reinstatement; (3) compensatory damages; and (4) punitive damages. He also contends that a hearing is unnecessary because his claims "are for a sum certain by virtue of the Defendant's admission to the Plaintiff's Complaint."2 (Doc. 12 at 8.) The Court disagrees with the latter contention—SMS's "admissions" do not necessarily mean that Mr. Servillo's requested relief is for a "sum certain." See Philpot, 317 F.3d at 1266; see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." (emphasis added)). Indeed, as explained below, the record does not adequately support any of Servillo's requested damages. An evidentiary hearing shall be conducted by the Magistrate Judge to determine these amounts.

### A. Back Pay

"Successful Title VII claimants . . . are presumptively entitled to back pay." Lathem v. Dep't of Children & Youth Servs., 172 F.3d 786, 794 (11th Cir.

---

2 Mr. Servillo's motion only cites Title VII cases, but FCRA was patterned after Title VII. See, e.g., Brown v. Cunningham Lindsey U.S., Inc., No. 3:05-cv-00141-TJC-HTS, 2005 WL 1126670, at *3 (M.D. Fla. May 11, 2005). As noted infra in footnote 3, FCRA—unlike Title VII—does not require a showing of malice for punitive damages. But Mr. Servillo does not ask for punitive damages under FCRA in his motion.

1999) (citing EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1251 (11th Cir.1997)). "Back pay 'is the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained.'" Akouri v. Fla. Dep't of Transp., 408 F.3d 1338, 1343 (11th Cir. 2005) (quoting Gunby v. Pa. Electric Co., 840 F.2d 1108, 1119–20 (3d Cir. 1988)). "Generally, a Title VII plaintiff can recover back pay only for the period the plaintiff is 'available and willing to accept substantially equivalent employment' elsewhere; courts exclude periods where a plaintiff is unavailable to work . . . from the back pay award." Lathem, 172 F.3d at 794 (quoting Miller v. Marsh, 766 F.2d 490, 492 (11th Cir. 1985)).

According to Mr. Servillo's declaration in support of default judgment, he was earning $935.00 per week at the time of his termination, which occurred on or about January 31, 2019. (Doc. 12-1 at ¶ 6.) Mr. Servillo contends that he is owed back pay for seventy-three weeks (the length of time between his termination and motion for final default judgment). (Doc. 12 at 5–6.) Thus, after multiplying his weekly salary by this seventy-three-week period, Mr. Servillo requests a gross back pay award of $68,255.00. While this calculation is helpful, Mr. Servillo never clarifies whether he earned any actual wages during this seventy-three-week period (nearly a year-and-a-half), or whether he was somehow unavailable to work during this time. Accordingly, the record presently before the Court does not adequately reflect a basis for awarding Mr. Servillo $68,255.00 in back pay. At the hearing before the Magistrate Judge, Mr. Servillo should discuss—with appropriate evidence and

7

reasonable mathematical detail—whether he earned any offsetting wages after his termination from SMS and whether he was unavailable to work during this time.

### B.     Front Pay in Lieu of Reinstatement

The Eleventh Circuit has also held that Title VII plaintiffs are presumptively entitled to either reinstatement or front pay. Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1528 (11th Cir. 1991) (superseded by statute on other grounds). "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E. I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001).

Reinstatement is the preferred remedy of the two, but front pay may be awarded if warranted by extenuating circumstances. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1339 (11th Cir. 1999). Such circumstances may include instances where the parties' antagonism would render reinstatement ineffective, where management has intimidated or threatened the plaintiff, or where the termination has harmed the plaintiff's emotional well-being. See EEOC v. W&O Inc., 213 F.3d 600, 619 (11th Cir. 2000) (collecting cases).

Based on the admitted facts, the Court agrees that reinstatement would not be a practical remedy here. But again, the record does not adequately support Mr. Servillo's request for front pay. Mr. Servillo "submits that 26 weeks of front pay is equitable under these circumstances." (Doc. 12 at 6.) After multiplying this period by his weekly salary, Mr. Servillo arrives at a front pay award of $24,310.00. It is unclear where the twenty-six-week period comes from, what relevance it has to this

case, or why Mr. Servillo believes it to be "equitable under these circumstances." He should address these issues at the evidentiary hearing.

### C. Compensatory Damages

A Title VII plaintiff can recover compensatory damages where the defendant "engaged in unlawful intentional discrimination." 42 U.S.C. § 1981a(a)(1). Compensatory damages include damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." 42 U.S.C. § 1981a(b)(3). They also cover "humiliation and emotional distress." Stallworth v. Shuler, 777 F.2d 1431, 1435 (11th Cir. 1985).

"[G]eneral compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity." Ferrill v. Parker Grp., Inc., 168 F.3d 468, 476 (11th Cir. 1999). A plaintiff's own testimony about their humiliation may be enough, but evidentiary shortcomings are relevant in determining the amount of compensatory damages ultimately awarded. Id.; see also Garrett v. Dep't of Corr., 589 F. Supp. 2d 1289, 1301 (M.D. Fla. 2007).

In his declaration, Mr. Servillo states that "in the weeks and months" following his termination, he "experienced bouts of sleeplessness, headaches, loss of appetite, nausea, irritability, stomach pain and depression, in addition to feelings of humiliation, loss of self-worth, and a loss of trust in employers." (Doc. 12-1 at ¶ 8.) Mr. Servillo further asserts that these symptoms "continued for approximately ten (10) months" after termination, but he continues to lack trust in employers even now. (Id.) Accordingly, he requests $25,000 in compensatory damages. (Doc. 12 at

7.) Mr. Servillo's declaration is enough to persuade the Court that he may be entitled to <u>some</u> amount of compensatory damages.  But the Court does not believe that the record, in its present state, adequately supports a compensatory damages award of $25,000.  Mr. Servillo should address these issues—with appropriate evidence and in reasonable mathematical detail—at the evidentiary hearing.

### D. Punitive Damages

Finally, Mr. Servillo requests punitive damages under Title VII in the amount of $25,000 because SMS "has admitted to acting with malice or a reckless disregard." (Doc 12 at 7.)  Upon reviewing the complaint, the Court does not agree that SMS has made any such admission; the words "malice" and "reckless disregard" do not appear in the complaint.  But Mr. Servillo is generally correct in that Title VII allows for punitive damages only where the employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[3]  42 U.S.C. § 1981a(b)(1).  Moreover, punitive damages under Title VII are available only if "the discriminating employee was high up the corporate hierarchy or . . . higher management countenanced or approved his behavior." <u>Ash v. Tyson Foods, Inc.</u>, 664 F.3d 883, 900–901 (11th Cir. 2011). While the admitted facts in the complaint are certainly reflective of sexual harassment, the record does not adequately reflect whether this harassment rose to

---

[3] Punitive damages under FCRA are governed by a wantonness test. <u>Speedway SuperAmerica, LLC v. Dupont</u>, 933 So. 2d 75, 90 (Fla. 5th DCA 2006); <u>see also</u> <u>Mercury Motors Exp., Inc. v. Smith</u>, 393 So. 2d 545, 549 (Fla. 1981). But Mr. Servillo does not request punitive damages under FCRA in his motion.

the level of "malice." Moreover, it is unclear where on the "corporate hierarchy" Ms. Tobias fell—or if there even was a "corporate hierarchy" besides Tobias herself. Mr. Servillo should address these issues at the evidentiary hearing.

Accordingly, it is now **ORDERED**:

1. Plaintiff Richard Servillo's motion for final default judgment, (Doc 12), is **GRANTED IN PART**. The Court grants a default judgment as to liability on all counts but reserves ruling on damages.

2. Pursuant to 28 U.S.C. § 636, Mr. Servillo's motion is **REFERRED** to United States Magistrate Judge Nicholas Mizell for a Report and Recommendation on damages after an evidentiary hearing. The parties shall attend the hearing at Magistrate Judge Mizell's discretion, which he will provide by separate order.

3. The Clerk shall **MAIL** a copy of this Order and any notice of hearing to Defendant Sola Medi Spa, LLC at its last known address in the Court file.

**ORDERED** in Fort Myers, Florida on February 5, 2021.

*[signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

11